**UNITED STATES, Appellee,**

v.

**Private First Class Tony J. VIOLA, 150–68–2575, United States Army, Appellant.**

**CM 449157.**

U.S. Army Court of Military Review.

29 June 1988.

---

For appellant: Captain Richard J. Anderson, JAGC (argued); Robert H. Bogucki, Esquire (on brief).

For appellee: Captain Patrick A. Hewitt, JAGC (argued); Colonel Norman G. Cooper, JAGC, Major Byron J. Braun, JAGC, Captain Gary L. Hausken, JAGC (on brief).

## OPINION OF THE COURT

KANE, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his plea, appellant was convicted of premeditated murder, a violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918 (1982). The convening authority approved his sentence to a dishonorable discharge, life imprisonment, total forfeitures and reduction to the grade of Private E–1.

### I

### *Statement of Facts*

On 2 March 1986, the appellant and his victim, Corporal (CPL) Jon R. Watson, both members of the same platoon, were on a command sponsored excursion to the Dragon Valley Ski Resort in Yong Pyong, Korea. The members stayed at a "hostel," a building apart from the main hotel at the resort. In the evening following the day's recreational activities, members of the platoon gathered at the hostel and engaged in a number of leisure activities during which alcoholic beverages were imbibed. Both CPL Watson and appellant became somewhat intoxicated, CPL Watson much more so than appellant. At approximately 2230 hours, four members of the platoon decided to go to the "Disco" which was located across the street from the main hotel of the resort. Appellant and CPL Watson were among this group.

Proceeding to the "Disco" on foot, the appellant and CPL Watson trailed the other two at some distance. CPL Watson's gait at this point of the evening reflected a state of extreme intoxication. Arriving at the "Disco", the lead pair discovered that the nightclub had closed for the night and decided that they would go across the street to the bar in the hotel. As they turned, the appellant and CPL Watson ap-

proached. Appellant and CPL Watson were told that the "Disco" was closed and that the lead soldiers were going to the other bar. This was the last time that CPL Watson was seen alive by anyone other than the appellant.

On the morning of 3 March 1988, the body of CPL Watson was discovered along the side of one of the hotel's external walls some distance from the "Disco" and the bar. The button of the victim's pants was unfastened and his zipper was open. His gloves were found on the ground. There were a number of young trees in the area which were supported by lengths of wood measuring approximately two inches by two inches by six feet. One of these lengths of wood was found approximately sixty feet from the body spattered with the victim's blood.

The autopsy report by a forensic pathologist found that CPL Watson had died of multiple head wounds. Specifically, he found that CPL Watson had suffered a minimum of three blows to the head delivered by a blunt instrument; the testimony of this expert indicated that the victim may have suffered as many as seven or eight blows to the head. The pathologist also found blunt force injuries to the right wrist and hand. There were also abrasions of indeterminate origin on the neck and left abdomen.

At trial, the appellant admitted that he had killed CPL Watson, but contended that his act was not premeditated. Rather, he asserted that the killing was committed in rage. According to the appellant, CPL Watson and he had been walking back to the hostel after leaving the "Disco" when two Korean nationals saw them and laughed at their drunkenness. CPL Watson wanted to fight the Koreans for laughing at them. To avoid any trouble, the appellant physically prevented and verbally dissuaded CPL Watson from fighting with the Koreans. According to the appellant, CPL Watson then redirected his combative inclinations from the Koreans towards him. He testified that CPL Watson had kicked him in the groin and then pushed him to the ground. CPL Watson then kicked ap-

pellant repeatedly while challenging him to get up and fight. Appellant testified that he retreated but that CPL Watson pursued him swinging his fists. The two then became embroiled in a fist fight during which the appellant picked up the length of wood and killed CPL Watson.

Other evidence at trial created a different picture. One witness testified that the appellant had told him that he had struck CPL Watson with the length of wood while CPL Watson was urinating. Another witness indicated that the appellant did not exhibit any signs of having been in a fight. There was also evidence that appellant had contrived to conceal certain aspects of his crime by removing and hiding the victim's wallet and by placing the length of wood against one of the trees some distance from the body.

Following the murder, the appellant returned to the hostel and told a fellow soldier that he thought that he had killed CPL Watson. The appellant then retired for the night.

## II

Appellant alleges several errors which warrant discussion. The first challenges a number of evidentiary rulings of the military judge which denied appellant's request for attendance of a witness who would testify about appellant's character for impulsivity and low tolerance of frustration and which held inadmissible evidence of the victim's alleged propensity for "belligerence" or "pugnacity".

### A

At trial, appellant requested the presence of Captain C, a military psychologist, to testify as to the appellant's "below average" ability to plan ahead, anticipate consequences, and to use social judgment. The appellant asserted that this character evidence of "subaverage anticipation of consequences" would "make a fact of consequence whether [appellant] had a motive to kill and formed a premeditated intent to kill ... less probable than it would be without evidence of the trait." The appellant also argued that his character traits of "impul-

sivity and low frustration tolerance" and of acting out his frustrations could lead the panel to conclude that the appellant had not premeditated the murder because he had not "developed socially in knowledge of judgment and his actions." The appellant was offering the psychologist's testimony to *establish* the existence of these character traits. The psychologist was not, however, offered as an expert.

Appellant's offer of proof suggested that he would have the members infer from the mere existence of these traits that the appellant did not premeditate the murder. The appellant did not indicate that the psychologist would be qualified as an expert to testify that one possessing such characteristics would be more or less unlikely to have premeditated the crime of murder. The military judge denied the defense motion to compel the attendance of the witness, finding that there was no relevant character trait within the meaning of Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 404(b) [hereinafter Mil.R.Evid.], and that the proffered evidence did not raise the defense of partial mental responsibility under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 916(c)[hereinafter R.C.M.].

The appellant later called another psychiatric expert who testified that an impulsive person would be less likely to consider the consequences of his actions before acting. Based on this testimony, the military judge correctly found the character trait of impulsivity to be relevant. *Cf. Ellis v. Jacob,* 26 M.J. 90 (C.M.A.1988) (evidence of inability to form requisite intent due to sleep deprivation and other pressures was fully admissible). At appellant's request, the military judge admitted a redacted version of the report of Captain C. The appellant did not renew his request for the attendance of Captain C. The appellant now contends that the military judge erred by "forcing" him to present this evidence by means of inadequate substitute for the live witness. We find that the military judge did not abuse his discretion when he denied Appellant's motion to secure the attendance of the witness.

An accused has a constitutional right to present in his defense evidence which is material and favorable. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). *See, e.g., Rock v. Arkansas,* —— U.S. ——, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (accused had a right to present relevant testimony from her hypnotically refreshed memory despite evidentiary bar to such evidence). This right does not, however, require the admission of all "evidence" proffered by an accused without regard for the evidentiary requirements of our adversarial system. *Taylor v. Illinois,* —— U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). The right encompasses only that evidence which "might influence the determination of guilt". *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987). *See* Mil.R.Evid. 401. Thus, this right is subject to the limitation that the proffered evidence be relevant. *United States v. Valenzuela–Bernal,* 458 U.S. at 867, 102 S.Ct. at 3446 (the Sixth Amendment does not guarantee the right to secure the attendance of any and all witnesses, only the production of witnesses whose testimony is relevant and necessary).

■ Character evidence may be probative of a lack of premeditation. *Cf. United States v. Klein,* 20 M.J. 26 (C.M.A.1985), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465. However, character evidence has probative value only when directed to an issue or matter in dispute with a legitimate *tendency to prove* the allegations of the party offering it. *See United States v. Elliott,* 23 M.J. 1 (C.M.A.1986). At the time the military judge ruled on the motion to produce the psychologist, the appellant's offer of proof identified the issue in dispute but failed to inform the military judge of the theory of the case and the allegation of fact the appellant intended to prove. There was no offer of proof of record that the alleged character traits were operative on the night of the murder or that the character traits proved a lack of ability to premeditate appellant's crime. Appellant simply indicated a desire to prove the existence of character traits and

to have the members conclude that the appellant acted in conformity therewith.

In this case, the evidence for which the appellant sought admission was specifically barred by the rules of evidence. Mil.R. Evid. 404 precludes admission of evidence of character traits to prove that the person acted in conformity therewith on a particular occasion unless the character trait is "pertinent" or, in other words, relevant. This general rule of inadmissibility conforms to the constitutional requirements established by the United States Supreme Court: a character trait cannot be material unless it is pertinent.

Having failed to demonstrate the relevance of the requested witness' testimony, the appellant was not entitled to production of the witness. R.C.M. 703(b). Thus, the ruling of the military judge did not violate the constitutionally grounded mandate of *Valenzuela–Bernal* or appellant's constitutional right to present witnesses in his defense.

■■■ Subsequent to this ruling, the appellant offered the expert opinion of a psychiatrist in order to establish adequate foundation for the admission of the report of Captain C. This report included Captain C's psychological findings concerning the character traits of the appellant. This foundation was adequate for admission of evidence of character traits contained in the report. The appellant could have reasserted his demand for the attendance of this witness at this time; however, he failed to request reconsideration of the military judge's earlier ruling in light of his now perfected offer of proof. A military judge has no duty to *sua sponte* reconsider an earlier ruling absent an affirmative request by counsel. *See United States v. Welch*, 25 M.J. 23 (C.M.A.1987) (the military judge's error in excluding evidence was not prejudicial where the accused withdrew his offer when the military judge offered to reconsider his earlier ruling). *See also United States v. DiCupe*, 21 M.J. 440, 444 (C.M.A.1986) (the court found no abuse of discretion by the military judge in admitting evidence where there was no request for a ruling by the accused).

Accordingly, we find no abuse of discretion by the military judge. At the time the military judge denied the appellant's request for this witness, the defective offer of proof was insufficient to overcome the general prohibition against character evidence set forth in Mil.R.Evid. 404 or to establish the minimal relevance necessary to trigger the constitutional safeguards of *Valenzuela–Bernal*. At the time the appellant perfected his offer of proof under both *Valenzuela–Bernal* and Mil.R.Evid. 404(b), he failed to request reconsideration of his earlier request for the attendance of the witness. The appellant was in no way "forced" to resort to the documentary substitute for the live testimony of the witness; rather, he elected to proceed with the documentary substitute.

## B

■■■ The appellant also assigns as error the ruling of the military judge excluding evidence of the victim's purported character for "belligerence" and "pugnacity". At trial, the appellant offered evidence that the victim was ill-tempered, hostile, aggressive, argumentative, obnoxious and belligerent. The appellant offered this evidence on the theory that the victim provoked others by "pushing" them until they reacted. The military judge properly ruled that he would permit evidence of the victim's character for violence or willingness to fight. However, he declined to permit the appellant to elicit testimony that the character of the victim was such that he may have provoked the fight. The military judge ruled that character evidence demonstrating the victim's propensity for violence or "pugnacity" was properly relevant; he found that evidence demonstrating the victim's propensity for "belligerence" was not relevant.

Testing for abuse of discretion, this court must identify the issue or matter in dispute and the allegations which the party offering it intends to prove. *United States v. Elliot, supra*. Appellant sought admission of the victim's character for belligerence premised on the theory that the murder was committed in an uncontrollable rage

which spontaneously erupted as the result of continuous and repeated abuses occasioned by the victim's belligerent character.

However, prior to offering evidence of the victim's propensity for belligerence, the appellant had testified that the victim had been the aggressor and that a murder was committed in the heat of passion arising from a physical altercation between the two men. Thus, the appellant did not attribute his actions to the victim's habitual belligerence but to the circumstances surrounding the murder. Moreover, there was no other evidence offered which would support this alternate theory. Consequently, the relevance of this evidence to the offense charged is tangential at best.

Nevertheless, appellant is entitled to proceed on alternate and even contradictory theories in conducting his defense. Notwithstanding appellant's inconsistent testimony, his theory attempts to persuade the finder of fact that the murder was not premeditated but was a spontaneous reaction to provocative actions by the victim which occurred over a period of time. The military judge found a distinction between character for belligerence and character for pugnacity, a distinction which escapes this court and *Webster's Third New International Dictionary* (1981). Therefore, we will test for prejudice and apply the test set forth in *United States v. Weeks*, 20 M.J. 22 (C.M.A.1985).

Applying the test set forth in *United States v. Weeks*, we find that the government's case for premeditation was not strong and conclusive, but was only circumstantial. However, we also find that the defense's theory of the case is implausible. The appellant's own testimony belied any inference that the murder was committed as the result of some pent up rage engendered by the victim's abrasive character; rather, his testimony indicated that the murder was committed in a moment's heat of passion. Moreover, much of the excluded testimony was not material to the victim's alleged abusiveness towards the appellant but would have only recounted the victim's purported "belligerence" towards others in general. The excluded testimony included but a single instance where the witness saw the victim get so mad with the appellant that he turned red in the face. Finally, from the appellant's own testimony and the testimony of other witnesses, we find more than adequate substitute for the evidence excluded by the trial judge. Accordingly, if there was an abuse of discretion in excluding evidence of the victim's character, the appellant was not prejudiced. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### III

■ The appellant also asserts that his trial was tainted by impermissible command influence. During the trial, a First Lieutenant C, the platoon leader of several of the witnesses, returned to the witness room after testifying and made a number of statements. This reaction was a spontaneous response to a rather searching and thorough cross-examination by the defense counsel. The appellant now contends that these statements constitute prejudicial unlawful command influence.

The incident was immediately brought to the attention of the military judge who conducted a contempt hearing during which the nature and impact of the statements were tested by direct and cross-examination. As required by *United States v. Karlson*, the appellant and his counsel had opportunity to examine the witnesses and First Lieutenant C. *See United States v. Karlson*, 16 M.J. 469 (C.M.A.1983).

Applying the standard of review mandated by *United States v. Thomas*, the evidence of record demonstrates beyond reasonable doubt that appellant's court-martial was not influenced by any of these remarks. *See United States v. Thomas*, 22 M.J. 388 (C.M.A.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Nor does the conduct of First Lieutenant C constitute such a flouting of the United States Constitution and the Uniform Code of Military Justice that the drastic remedy of dismissal is warranted. *Cf. United States v. Levite*, 25 M.J. 334 (C.M.A.1987). Accordingly, we find this assignment of error to be without merit.

## IV

Appellant also contends that the evidence is insufficient to sustain a conviction for premeditated murder. He argues that there is insufficient evidence of record from which to infer the element of premeditation.

In order to sustain a conviction of premeditated murder, the government must prove beyond a reasonable doubt that the accused committed murder with a premeditated design to kill. *See* Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M.], para. 43b(1). The element of premeditated design includes both a specific intent to kill and consideration of the act intended. M.C.M., para. 43c(2)(a). Intent to kill alone is insufficient to sustain a conviction for premeditated murder. *See* W. LaFave and A. Scott, *Criminal Law*, § 73 (1972). *See also* F. Bailey and H. Rothblatt, *Crimes of Violence: Assault and Homicide*, § 550 (1973), *and* C. Torcia, *Wharton's Criminal Law* (14th ed.), § 140 (1979). To sustain such a conviction, the killing must have been committed after reflection by a cool mind. *Id.* Because such reflection or deliberation is a subjective state of mind, the finder of fact must often resort to circumstantial evidence of premeditation. LaFave and Scott's treatise on the subject finds three categories of evidence useful in resolving the question of premeditation. *Id.* These categories include evidence of planning activity, evidence of motive, and evidence of the nature of the killing. *Id.*

Prior to the date of the murder, the appellant bore considerable animosity for his victim, CPL Watson. The appellant resented his victim's abrasive and, at times, abusive style of leadership. The appellant fostered such a deep and abiding ill will towards his victim that he planned and took significant steps towards assaulting the victim on several occasions. On 2 March 1987, the appellant and his victim departed the hostel at approximately 2330 hours and walked to the "Disco". According to all the witnesses and to the appellant himself, their relations at that time were amicable and convivial. We specifically find that both were somewhat intoxicated, the victim more so than the appellant.

We will not speculate on what course of action the two decided upon on finding the "Disco" closed for the evening. However, it is clear that, before implementing those plans, the victim apparently decided to walk to a more secluded spot some distance from the entrance to the main hotel in order to relieve himself. We can infer that the victim told the appellant of his intentions; the appellant accompanied the victim during this momentary deviation. We infer these facts from the physical evidence at the crime scene and from the admissions of the appellant. These facts, together with the accounts of the appellant's physical appearance following the murder (which revealed no signs of his having been in any sort of fight) and the victim's state of extreme intoxication, belie the appellant's rendition of the events of that night. Consequently, we find that the appellant's attack was not provoked by any physical aggression by the victim. Nor do we find that the attack was verbally provoked. While there was some evidence of the victim's abrasive personality in general, there is no evidence of record which would justify an inference that the victim was verbally abusive on the night in question. Quite the contrary, the relations between the victim and the appellant appear to have been congenial.

The appellant seized upon the opportunity presented by the relative isolation of the area at that time of night and the victim's relatively defenseless state caused by his intoxication and state of undress. The appellant took the length of wood and struck the victim as he prepared to relieve himself at the curb of the street outside the building. The victim, caught unawares, attempted to ward off subsequent blows as evidenced by the defensive wounds on his hand. The victim reeled from the assault and retreated to a position alongside the wall of the building. There he fell to the ground and lay on his back, his pants still unzipped. The appellant continued his attack which was ultimately lethal.

The nature of the attack as evidenced by the forensic examination of the body indicate that the blows were calculated to kill and not merely to wound. All of the blows were concentrated about the head and neck. The only other marks on the body consisted of defensive wounds on the hand of the victim and a single abrasion on the abdomen.

Following the death of the victim, the appellant attempted to conceal the evidence of his crime by leaving a "false clue" for the investigation he knew would follow. He removed the victim's wallet and concealed it intending that the investigators conclude that the murder was committed during the course of a robbery. He also removed the murder weapon to a point approximately sixty feet from the body to further frustrate the investigation. Both of these acts were deliberate and calculated.

From these facts and inferences we find more than adequate evidence of the appellant's premeditated design to commit murder. "Premeditation" does not necessarily connote planning nor does it contemplate that the intent to kill be entertained for any period of time. M.C.M., para. 43c(2)(a). As we have noted above, premeditation only requires a cool mind to reflect on his intent to kill before committing the lethal act. The facts and inferences detailed above, including the lack of provocation, the disadvantage of the victim, and the nature, extent, and duration of the attack, demonstrate beyond reasonable doubt that the appellant intended to kill, considered the means, opportunity, and chances for success, and proceeded to carry out his design in a methodical and deliberate manner.

## V

 Finally, the appellant argues that court-martial findings by a non-unanimous panel of five members selected by the convening authority did not satisfy the constitutional requirements of due process. Similar challenges to the constitutionality of the findings of courts-martial have been repeatedly rejected. *United States v. Guilford*, 8 M.J. 242 (C.M.A.1979). *See*

*also United States v. Brown*, 13 M.J. 381 (C.M.A.1982) (summary affirmance).

We have considered the other assignments of error, including appellant's sentence appropriateness argument, and find them to be without merit. The findings of guilty and sentence are affirmed.

Senior Judge DeFORD and Judge KENNETT concur.