**UNITED STATES, Appellee**

v.

**Private First Class Dwan GATES, 338–64–1415, United States Army, Appellant.**

**ACMR 9102827.**

U.S. Army Court of Military Review.

25 Feb. 1993.

For Appellant: Captain Clayton R. Diedrichs, JAGC (argued), Colonel Malcolm H. Squires, Jr. (on brief).

For Appellee: Captain Robert J. Walters, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before De GIULIO, BAKER and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a military judge sitting as a general court-martial. Pursuant to his pleas, he was found guilty of two specifications of rape, one specification of robbery, one specification of forcible sodomy, two specifications of kidnapping, and one specification of false swearing, in violation of Articles 120, 122, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 922, 925, and 934 (1982) [hereinafter UCMJ]. Although he pled guilty to the lesser offense of unpremeditated murder, he was found guilty of premeditated murder. Contrary to his plea of not guilty to felony murder, he was also found guilty of that offense.[1] Both of these offenses are in violation of Article 118, UCMJ. Appellant was sentenced to a dishonorable discharge, confinement for life, total forfeitures, and reduction to Private E1. The convening authority approved the sentence.

---

1. The specification alleging felony murder was dismissed after a finding of guilty was made as to that specification. Assuming that the finding of guilty of premeditated murder was set aside, we believe the finding of guilty to felony murder would be revived. *See United States v. Zupancic,* 18 M.J. 387, 388–89 (C.M.A.1984).

Appellant asserts five errors. Only three of those asserted errors will be discussed in this opinion. He asserts that the evidence is insufficient to prove that he acted with premeditation when he killed the victim; that he was denied effective assistance of counsel; and that his plea of guilty to false swearing was improvident because the military judge failed to elicit from appellant, and the record fails to show, that the agent swearing him to the oath was authorized to administer it. We find the assertions without merit and affirm.

On 29 November 1990, appellant observed the victim, Carol, outside a Shoppette on a military installation in Germany. He had never seen her before this date. When she entered her car, he grabbed her by the hair, forced his way into the car, brutally punched her in the face and forced her to drive to an isolated place in the local community. He forced her to surrender her wedding and engagement rings, forced her to remove her clothes, forced her to straddle him, and raped her. After completing forcible sexual intercourse with Carol, he told her to put on her clothes. He then strangled her for four or five minutes until she became unconscious. He started to exit the car. He opened the door and set one foot on the ground. He noticed that his victim was still breathing. He strangled her again for three or four minutes until she was dead. (In a confession to an investigator made over five months after the killing, appellant stated that he strangled her the second time to make sure she was dead). He then walked away from the car. He threw Carol's wedding band away but kept the engagement ring. The ring was found in his locker during a consent search conducted in May 1991. At the time of her death, Carol was thirty years old and had recently arrived in Germany after her marriage to an army officer on 1 September 1990.

While on duty as the charge of quarters runner on 23 May 1991, appellant used the unit alert roster to obtain the home telephone number of a sergeant who was on temporary duty in the United States. He called the sergeant's wife, M. He told her

something had happened to her husband and she would have to come to the unit. When she arrived at the unit, he had her drive him to a secluded area where he told her that her husband was unfaithful to her. When she asked him to leave the car, he struck her in the face. He took her away from the car where he sodomized and raped her. She tried to run away but he caught her. He had her dress and informed her he wanted her "to turn him in" and directed her to drive to his unit. He changed his mind because it was too embarrassing and directed her to drive to the military police station. While on the way, he wanted to stop and call his grandmother, but M sped on to the entrance gate where she screamed to the military police guards that she had been raped. Appellant escaped from the car and went back to his duties as charge of quarters runner. He was later identified by M as her assailant. Although appellant initially denied the offense, he later confessed to the rape of M and the killing of Carol. In his confession, appellant stated that a person named "Demon" took over his mind and body, forced Carol into the car, robbed her, raped her, and killed her. During a consent search of his room, Carol's ring was found in his wall locker.

## I.

### Sufficiency of the Evidence to Prove Premeditation

Appellant correctly contends that intent to kill, standing alone, is insufficient to prove premeditated murder and that premeditation requires reflection of a cool mind. *See United States v. Viola,* 26 M.J. 822 (A.C.M.R.1988). If there is no direct evidence of premeditation, it can be inferred from evidence of planning, evidence of motive, and evidence of the nature of the killing. *Id.* Appellant maintains that there is no evidence of planning because he did not know Carol, did not know where he was going after he kidnapped her, did not murder her to avoid detection, but simply went wild and grabbed her throat.

He maintains that there is no evidence of motive because he saw Carol at the Shoppette for the first time in his life; and that there is no evidence that the killing was to avoid detection, because appellant took no steps to hide the body, wipe away fingerprints, or destroy evidence. Appellant further points to his keeping of Carol's ring to show his lack of motive.

As to the nature of the killing, appellant contends that there is no evidence of torture or egregious method of death. He maintains that there is no scenario from which premeditation could be inferred, comparing his case to *Viola* (incessant bludgeoning of a drunk victim); *United States v. Redmond,* 21 M.J. 319 (C.M.A.1986) (attempts to conceal the body and hide evidence); *United States v. Seeloff,* 15 M.J. 978 (A.C.M.R.1983) (wanted to know what it felt like to kill); *United States v. Gomez,* 15 M.J. 954 (A.C.M.R.1983) (No cooling-off period after threats); and *United States v. Cruz,* 17 M.J. 534 (A.C.M.R.1983) (extended beating).

■ Government appellate counsel correctly contends that premeditation needs only to exist before the killing and need not exist for any length of time. *See* Manual for Courts–Martial, United States, 1984, para. 43c(2)(a); *United States v. Cooper,* 28 M.J. 810, 817 (A.C.M.R.1989), *aff'd,* 30 M.J. 201 (C.M.A.1990).

In considering the issue of premeditation we find that appellant saw Carol for the first time in his life at the Shoppette. He stalked her, forced her into the car, grabbed her hair, and brutally punched her in the face. He forced her to drive to an isolated area, robbed her of her rings, forced her to remove her clothing, forced her to straddle him, and raped her. He then choked her and started to leave the car. Most damning to appellant concerning appellant's premeditation is that he noticed her breathing and again choked her until she was dead. From this action we find that appellant killed the victim to hide his crimes.

Testing for legal sufficiency, we hold that, considering all the evidence in a light most favorable to the government, a rational factfinder could find all the essential elements of the offense. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Testing for factual sufficiency, after weighing the evidence of record and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of appellant's guilt of the offense of premeditated murder. *See* UCMJ art. 66(c); *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987).

## II.

### Effective Assistance of Counsel

■ Appellant asserts he was denied effective assistance of counsel because his counsel failed to introduce evidence at trial that appellant lacked the capacity to premeditate. He contends that counsel failed to present to the court-martial evidence of sanity board findings that, although at the time of the offense appellant was able to appreciate the nature and quality of his acts and could appreciate the wrongfulness of his conduct, he did have a mental disease, chronic in nature, that was moderate to severe. The report stated that appellant was very emotionally and psychologically disturbed. Appellant contends that, although he was not insane, this evidence should have been presented to show he was unable to premeditate. *See United States v. Kunak,* 5 U.S.C.M.A. 346, 17 C.M.R. 346 (1954).

Appellant's description of the sanity board's findings does not go far enough. The board wrote:

> This patient is severely emotionally and psychologically disturbed. He has a deeply ingrained pattern of behavior that will be difficult to change. He has deep emotional scars from a very abusive and painful childhood and adolescence. He harbors deep feelings of anger, resentment, and hatred towards women, especially his mother.... [H]e is aware of his disturbance and is most likely exaggerating his symptoms, probably as a cry for help and *to lessen [sic] his criminal consequences."*

(emphasis added). The sanity board noted that appellant blamed a different personality, Demon, for the murder of Carol. The board stated that Demon was "not a well developed personality like those seen in people with Multiple Personality disorders. Instead Demon appears to be more an extension of [appellant's] intense anger that comes out for brief episodes and has been ascribed a name."

Appellant also asserts that his counsel was ineffective for pleading appellant guilty to the offense of unpremeditated murder where appellant had a valid defense of lack of mental capacity to form the specific intent to kill. *See Ellis v. Jacob,* 26 M.J. 90, 93 (C.M.A.1988) (although Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 916(k)(2) [hereinafter R.C.M.] precludes the use of lack of mental responsibility as relates to forming intent, the rule does not bar presenting evidence in support of a claim of lack of specific intent). Again, he points to the sanity board, contending that the evidence should have been presented to the factfinder. He further maintains that counsel's reliance on the sanity board and interviews with its members, counsel's failure to request an expert in psychology, and counsel's failure to pursue this subject was ineffective assistance of counsel.

█ In an affidavit submitted to this court after appellant asserted ineffective assistance of counsel,[2] counsel stated that he interviewed the board members who informed him that appellant either made up or exaggerated "Demon." They opined that although appellant had a personality disorder, he still had the mental capacity to premeditate and to form the specific intent to murder Carol. Members of appellant's former and past units indicated the appellant had never talked about "Demon." Finally, in defense counsel's interviews with

appellant, appellant admitted that he and not "Demon" killed Carol. Appellant told him that he murdered Carol because he "didn't want to get caught." After the pretrial investigation,[3] defense counsel reviewed it with appellant and informed him that a general court-martial was recommended, that the convening authority intended to refer the case as capital, and that he could be sentenced to death if convicted of either premeditated murder or felony murder. Counsel stated that both the mitigating and aggravating factors were discussed. He and appellant agreed that the aggravating factors outweighed the mitigating factors. In addition the government intended to call Carol's husband and her family for victim impact evidence.

Counsel stated that, after weighing all the factors, appellant wished to plead guilty to premeditated and felony murder in exchange for a non-capital referral. Counsel stated,

He simply did not want to risk the death sentence with a not guilty plea and a capital referral. He was willing to accept a life sentence with the prospect of parole rather than risk the death sentence. We also discussed the option of a not guilty plea and the use of an independent expert on the mental capacity issue; but [appellant] stated that he did not wish to pursue this option and risk the death sentence. Moreover, in light of his true motive for murdering [Carol], he did not question or dispute the Sanity Board findings.

Trial defense counsel proceeded, as a matter of strategy, to negotiate a plea bargain and was surprised when the convening authority agreed to a plea to unpremeditated murder and other offenses in exchange for a non-capital referral.

█ In order to support the assertion of ineffective assistance of counsel, appel-

2. In his motion for this Court to reconsider its decision to admit trial defense counsel's affidavit as a government exhibit, appellant contends that counsel violated the attorney-client privilege by disclosing matters unnecessary to resolution of the issue. We find that counsel's disclosures are reasonably necessary to answer appellant's allegations. We have denied appel-

lant's motion. An appellant must understand that he waives the privilege in relation to his allegations when he asserts ineffective assistance of counsel. *United States v. Mays,* 33 M.J. 455 (C.M.A.1991).

3. UCMJ art. 32.

**950**

lant must show his defense counsel was seriously deficient in some respect and that there is a reasonable probability that but for that deficiency, the result of trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's competence is presumed, and appellant must rebut that presumption by showing specific errors which were unreasonable under prevailing professional norms. *See United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). Tactical decisions do not amount to ineffective assistance of counsel. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *see also United States v. Bono*, 26 M.J. 240, 242 (C.M.A.1988).

In the case before us, counsel and appellant determined that the defenses of lack of capacity to premeditate and to form specific intent did not exist and would not be pursued. Appellant and counsel determined that appellant would, in all likelihood, be convicted of premeditated murder or felony murder and receive the death penalty in the face of a sure capital referral. After reviewing the evidence in this case, we do not believe that conclusion was mistaken in this case.[4] Consequently, to avoid even the possibility of the death sentence, counsel negotiated a favorable agreement. Having made those tactical decisions and received the benefit of his bargain, appellant should not now be heard to complain that his counsel was ineffective. Appellant has not shown his counsel was deficient. His assertion of error is without merit.

### III.

Providence of the Plea to False Swearing

 Appellant's complaint is that the military judge failed to elicit from him and that the record fails to show that the agent swearing him was authorized to administer oaths. After describing how the Criminal Investigation Command (CID) agent took

his statement during the investigation, the military judge asked, "You realize that as a special agent of the CID, that's something he's authorized to do by regulation?" Appellant answered, "Yes, sir." Although a more explicit inquiry concerning this element is desirable, we hold the inquiry in this case was sufficient to satisfy the requirements of *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969). *See also United States v. Lunsford*, 34 M.J. 268 (C.M.A. 1992).

The findings of guilty and the sentence are affirmed.

Judge BAKER and Judge WALCZAK concur.

---

**4.** The tactical decision not to present a defense using appellant's mental status was based on appellant's statements to his counsel, and the full report of the sanity board furnished to counsel under R.C.M. 706(c)(3)(B). Accordingly, there was no need for counsel to protect that information under the attorney-client privilege by requesting a psychiatrist be appointed to the defense team. *Cf. United States v. Toledo*, 26 M.J. 104 (C.M.A.1988).