DeCICCO, Senior Judge.
A general court-martial convicted Private Levell, contrary to his pleas, of the premeditated murder of Sergeant [Sgt] Christopher Smith, U.S. Marine Corps, in violation of Article 118, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 918. He was also found guilty, in accordance with his pleas, of an 8-day unauthorized absence in violation of Article 86, UCMJ, 10 U.S.C. § 886. The court members sentenced him to confinement for life, a dishonorable discharge, and the forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged, except that he disapproved confinement in excess of 40 years.
In this appeal, the appellant raises two assignments of error.[1] First, he argues that the military judge erred in denying the defense’s request to instruct the members regarding the concept of a “cool mind” in the court’s premeditated murder instruction. Second, he asserts that the prosecution failed to prove his guilt of premeditated murder beyond a reasonable doubt, claiming that he did not murder Sgt Smith with a “cool mind.” Therefore, he argues that we should affirm a finding of the lesser offense of unpremeditated murder. Having considered the record of trial, and the briefs and oral arguments of the parties, we have concluded that the military judge did not err to the substantial prejudice of the appellant in not giving the instruction requested by the defense. We also have concluded that the evidence was sufficient to establish the element of premeditation beyond a reasonable doubt. Therefore, we affirm the findings and sentence as approved on review below.

Facts

On the evening of 1 November 1991, Sgt Smith and several of his friends, after drinking some wine and beer, decided to visit a club at the Ramada Inn located on Highway 17 near Camp Lejeune, North Carolina. Shortly after their arrival, one of Smith’s companions, Sgt Spencer, became involved in a heated argument with a woman in the parking lot adjacent to the Inn. This woman was the appellant’s girlfriend. Upon hearing of the confrontation involving his girlfriend, the appellant, who was inside the club, burst outside. Witnesses described him as angry, but not drunk. Sgt Fuller accompanied the appellant outside. The argument continued with Smith doing some of the shouting and attempting to restrain the parties, and with Spencer slapping Fuller on the face.
At this point, the appellant stated he was “going to get [his] sh_” Those who heard this comment realized that appellant was referring to a weapon. Spencer replied: “Go get your pea shooter; I’ll be right here.” The appellant then obtained Fuller’s car keys and retrieved a black case with a handle from the car. As the appellant returned to the site of the argument, Corporal [Cpl] Quick confronted him and tried to talk him out of bringing a weapon to the argument. The appellant dropped the case. He and Cpl Quick then squared off with fists raised, and a hotel security guard tried to break them *847 up. Just then, Smith ran by the appellant, between two parked cars.[2]
With Smith lying dazed on the ground, the appellant abandoned his confrontation with Cpl Quick, walked three to five steps to where he had dropped his gun case, removed the gun, walked over to Smith, and, according to one witness, said ‘What do you think about this?” The appellant then fired a single .22 caliber bullet into Smith’s chest. Various witnesses testified that 3 to 10 seconds elapsed from the time he went for his gun case to the firing of the shot. After shooting Smith, the appellant fled and avoided immediate apprehension. He turned himself in several days later. The bullet he fired into Sgt Smith’s chest perforated Smith’s pulmonary artery and lacerated his aorta. He was pronounced dead shortly after the shooting at a nearby hospital.
The convening authority referred the case for trial by general court-martial as a capital case. In a pretrial motion, the defense requested the military judge to instruct the court members as follows regarding the offense of premeditated murder:
You are advised that the killing of a human being is unlawful when done without legal justification or excuse. The phrase “premeditated design to kill” means the formation of both a specific intent to kill and consideration of the act intended to bring about death. Intent to kill alone is insufficient to sustain a conviction for premeditated murder. In other words, the government must prove to you beyond a reasonable doubt that the accused specifically intended to cause the death of Sergeant Smith, and that the accused reflected upon his action prior to his shooting of the pistol.
The “premeditated design to kill” must precede the killing but does not have to exist for any considerable or particular length of time. While the law does not set forth any particular time that the act must have been considered, you are advised that the government must prove to you beyond a reasonable doubt that the killing was committed by the accused “after reflection by a cool mind.”
If you do not find beyond a reasonable doubt that at the time of the killing of Sergeant Smith, the accused had a premeditated design to kill him, then you may not find the accused guilty of the premeditated murder of Sergeant Smith.
Appellate Ex. LXXIII (emphasis in original). The defense argued, citing United States v. Viola, 26 M.J. 822, 829 (A.C.M.R.), aff'd. 27 M.J. 456 (C.M.A.1988) (sum.disp.), cert, denied, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989), that such language was necessary to explain sufficiently the subtle difference between premeditated and unpremeditated murder to the members. The highlighted language in the instruction was taken directly from Viola
The military judge declined to give the proposed instruction. He stated:
I am opposed to the language, “after reflection by cool minds.” I am opposed of [sic] it for the following reason, that language presupposes, in my mind, that one cannot premeditate murder while in an agitated state of mind, or in the heat of passion. This is not the law as I read the law. The members may consider the accused’s state of mind, or mental processes when making the determination whether he has the requisite capacity to premeditate to kill. But, to give them that instruction using the language “after reflection by cool minds” suggests to me, and I’m sure would suggest to them, that you couldn’t premeditate while in an agitated state. This is not true. You can, and the law recognizes the fact that you can.
... But, to tell them that there has to be a cooling off period, and only then can he premeditate, is not the law, and that’s what that language suggests.
Record at 273-74. The military judge further ruled that the defense counsel could not argue that passion means a degree of anger, rage, pain or fear which prevents cool reflection. Record at 275.
*848 In his instructions to the members, the military judge gave them the tailored elements of premeditated murder. Record at 646-47. He then stated:
Now you are advised that the killing of a human being is unlawful when done without legal justification or excuse. The term “premeditated design to kill,” means the formation of a specific intent to kill and consideration of the act intended to bring about death. The premeditated design to kill does not have to exist for any measure-able or particular length of time. The only requirement is that it must precede the killing.
Now if you do not find beyond a reasonable doubt that at the time of the killing of Sergeant Christopher J. Smith, the accused had a premeditated design to kill Sergeant Smith then you may not find Private Levell guilty of the premeditated murder of Sergeant Smith.
You are advised that an issue has been raised by the evidence as to whether the accused acted in the heat of sudden passion. “Passion” means the degree of rage, pain, or fear which prevents cool reflection. The [sic] sufficient cooling off time passes between the provocation and the time of the killing which would allow a reasonable person to regain self-control and refrain from killing. Provocation will not reduce murder to the lesser offense of voluntary manslaughter. However, you may consider evidence of the accused’s passion in determining whether he possessed sufficient mental capacity to have the premeditated design to kill.
An accused cannot be found guilty of premeditated murder if at the time of the killing his mind was so confused by anger, rage, pain, sudden resentment, or fear that he could not or did not premeditate. On the other hand, the fact that the accused’s passion may have continued at the time of the killing does not necessarily demonstrate that he was deprived of the ability to premeditate or that he did not premeditate. Thus, if you are convinced beyond a reasonable doubt that sufficient cooling off time had passed between the provocation and the time of the killing which would allow a reasonable person to regain his self-control and refrain from killing you must decide whether he in fact had the premeditated design to kill.[3]
Record at 647-48.
After giving this instruction, the military judge asked the members if they understood the difference between premeditated murder and unpremeditated murder, and they indicated that they did. Record at 648. The members then convicted the appellant of premeditated murder by a non-unanimous vote. The lack of unanimity eliminated the possibility of a death sentence. Article 52(a)(1), UCMJ, 10 U.S.C. § 852(a)(1).

Discussion

The Instruction Issue

In military law, no person may be convicted of premeditated murder unless the prosecution establishes beyond a reasonable doubt that he unlawfully killed another with a “premeditated design to kill.” Article 118(1), UCMJ. To define this concept, the Manual for Courts-Martial, United States, 1984[MCM], ¶ 43c(2)(a) provides:
A murder is not premeditated unless the thought of taking life was consciously conceived and the act or omission by which it was taken was intended. Premeditated murder is murder committed after the formation of a specific intent to kill someone and consideration of the act intended. It is not necessary that the intention to kill have been entertained for any particular or considerable length of time. When a fixed purpose to kill has been deliberately formed, it is immaterial how soon after-wards it is put into execution. The existence of premeditation may be inferred from the circumstances.
The words “consideration of the act intended” to bring about death are not terms of art and have ordinary meanings. United States v. Hoskins, 36 M.J. 343, 346 (C.M.A. *849 1993); United States v. Teeter, 16 M.J. 68, 71 (C.M.A.1983). In an attempt to explain the distinction between premeditated and unpremeditated murder, the Army Court of Military Review in Viola, citing various legal treatises, held that “[t]o sustain a conviction [for premeditated murder], the killing must have been committed after reflection by a cool mind.” 26 M.J. at 829. The U.S. Court of Military Appeals (now the U.S. Court of Appeals for the Armed Forces) adopted the “cool mind” distinction in Hoskins. It stated that “[premeditation requires that one with a cool mind did, in fact, reflect before the killing.” 36 M.J. at 346. Subsequently, in a capital case in which it upheld the distinction in Article 118, UCMJ, between premeditated and unpremeditated murder against a constitutional attack, it found that “consideration of the fatal act with a cool mind” was a more serious form of murder justifying a more severe penalty than an intentional killing without such consideration. United States v. Loving, 41 M.J. 213, 279-80 (1994), cert. granted, — U.S. -, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995). We have also held that proof of reflection with a cool mind is necessary to sustain a conviction. United States v. Thomas, 43 M.J. 550, 588 (N.M.Ct.Crim. App.), mandatory review filed, 43 M.J. 173 (C.M.A.1995).
From the above, we conclude that the “cool mind” distinction was adopted to explain what evidence is needed to sustain a conviction of premeditated murder. It clarifies the Code’s language regarding a “premeditated design to kill” and the MCM’s language of what is meant by a “consideration of the act intended.” In light of Hoskins and Loving, it is now clear that these terms contemplate a reflection by a cool mind before the fatal act in order to sustain a conviction. The nature and extent of the “premeditated design to kill” and “consideration of the act intended” have not changed. We do not read Hoskins as establishing a stricter test for what the prosecution must prove or as modifying what the Court held in Teeter.
The cases that have discussed the “cool mind” distinction have not involved instructional issues. The issue in Viola and Hoskins involved the sufficiency of the evidence, not the instructions that were given. Moreover, the instructions given in this case were identical to the instructions found sufficient in Loving. 41 M.J. at 280. Neither Hoskins, Loving, nor Viola held or even vaguely suggested that court members must be specifically instructed that reflection by a “cool mind” is needed to sustain a conviction of premeditated murder. What is required is that the militaiy judge provide the court members with clear and meaningful instructions as to the distinction between premeditated murder and unpremeditated murder. While counsel may request certain instructions from the military judge, the judge possesses substantial discretion in deciding what instructions to give. United States v. Damatta-Olivera, 37 M.J. 474 (C.M.A.1993), cert, denied, — U.S.-, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994). The exact words the military judge selects to explain a particular concept are within his discretion. An accused does not have a right to have any particular form or words used in an instruction. United States v. Czekala, 42 M.J. 168, 170 (1995), cert, denied, — U.S.-, 116 S.Ct. 403, 133 L.Ed.2d 322 (1995) (discussing particular form of words in instruction on the prosecution’s burden of proof). What really matters is not the particular words, but the proper explanation of the legal principle involved to the court members.
In Damatta-Olivera, the Court used a three-part test to determine whether the denial of a requested instruction constitutes error: (1) whether the charge is correct; (2) whether it is substantially covered in the main charge; and (3) whether it is on such a vital point in the case that the failure to give it deprived the accused of a defense or seriously impaired its effective presentation. 37 M.J. at 478.
In this case, the requested instruction was not an incorrect statement of the law. Viola, 26 M.J. 822 (1988); Hoskins, 36 M.J. 343 (1993). While we would not have found error had the military judge given it to the members, we believe his rationale for not giving it made sense. Persons can be angry and yet not be in such a rage so as to preclude reflection by a cool mind. In other words, some angry persons can and often do pre *850 meditate. Anger does not always preclude premeditation. It is this anger that can create an intent to kill, and it may not prevent one from coolly reflecting in a calculated manner.
Second, the requested instruction did not provide anything substantive in addition to the standard instructions given by the military judge. These instructions sufficiently covered the important concept of the distinction between premeditated murder and unpremeditated murder. The military judge defined the element requiring a “premeditated design to kill” with the MCM’s “consideration of the act intended” language. Furthermore, the military judge instructed the members that they could not convict the appellant of premeditated murder if they found he had acted while in a heat of sudden passion (defined as rage, pain or fear that prevents cool reflection). He also instructed that if they were convinced that a sufficient “cooling off time” had passed between the provocation and the time of the killing that would allow a reasonable person to regain self-control and refrain from killing, then they had to decide whether the accused had a premeditated design to kill. We find the instructions clear and consistent with those that have been held to have an ordinary meaning. Teeter, 16 M.J. 68 (1983). The members understood the instructions and had no questions regarding them. The instructions given conveyed the necessary concept of a premeditated design to kill, even though the specific language requested by the defense was not used.
Third, after examining the entire record of trial, we find that the military judge’s refusal to give the requested instruction did not deprive the appellant of the ability to highlight the distinctions between premeditated and unpremeditated murder to the members. The defense position throughout trial that the appellant did not premeditate the killing was displayed from voir dire through final argument. Thus, while the defense counsel was not free to use the “cool mind” language in argument, he was able to argue the concepts of reflection and premeditation fully and effectively. Therefore, the appellant has also not met the third prong to establish instructional error.
Based on the foregoing, we find no merit in the first assignment of error. The instructions given to the members were adequate and, in fact, were the same as those upheld by the Court of Appeals in Loving, 41 M.J. 213 (1994). The military judge did not abuse his discretion in this case.

The Sufficiency of the Evidence Issue

The test for determining the legal sufficiency of the evidence is whether, considering all evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh’g denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). The test for factual sufficiency is whether, after making allowances for not having personally observed the witnesses, we ourselves are convinced of the appellant’s guilt beyond a reasonable doubt. Article 66(c), UCMJ; United States v. Turner, 25 M.J. 324 (C.M.A.1987). In this case, the appellant challenges only the factual sufficiency of the evidence on the element of premeditation.
The Government argues that the appellant began to premeditate Sgt Smith’s murder even before the appellant left to retrieve the gun. This argument is based on some testimony that Smith was engaged in the verbal confrontation with the woman and the appellant. We are not so convinced. It was possible that the appellant decided to retrieve his gun simply to brandish it at the scene of the argument to intimidate his adversaries. Also, based on all of the circumstances occurring during the argument outside the Ramada Inn, we conclude that the appellant’s statement that he was “going to get his sh_” was directed toward Sgt Spencer, and not Sgt Smith. Spencer is the one who replied to it that the appellant could go get his “pea shooter.” Therefore, evidence of premeditation was lacking prior to the appellant’s confrontation with Cpl Quick.
We are convinced of the appellant’s premeditation by his actions after Smith ran by *851 him. The appellant did not instinctively react and shoot him. He had to walk several steps, open his gun case, take the gun out of the case, walk over to where Smith was on the ground, tell him “what do you think of this” and then fire.
Drawing reasonable inferences from the circumstances, we are convinced that the appellant reflected with a cool mind over whether or not to kill and weighed the reasons for and against such a choice during these actions. While all of these movements occurred in several seconds, the test for premeditation is not one of time, but one of reflection. Thoughts may follow each other with great rapidity, and cold, calculated judgment may be arrived at quickly. In order to find premeditation, the law does not require an extended period of thought as depicted in the meditative pose of Rodin’s The Thinker. Premeditation can exist even when the act of killing follows immediately after the formation of the intent. Here, the appellant had formed a premeditated design to kill Sgt Smith by the time he pulled the trigger. This evidence is legally and factually sufficient to prove premeditation. United States v. Williams, 39 M.J. 758 (A.C.M.R.1994). His statement to Smith just before he shot him articulated his completed thought process and illustrated in graphic and very tragic terms his prior consideration of the act he was about to commit. Therefore, we find the evidence legally and factually sufficient to sustain the finding reached by the court-martial.

Decision

Accordingly, the findings and sentence, as approved on review below, are affirmed.
Judge DOMBROSKI and Judge CLARK concur.

. I. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY REFUSING DEFENSE COUNSEL’S REQUEST TO INCLUDE THE CONCEPT OF A "COOL MIND" IN THE COURT’S PREMEDITATED MURDER INSTRUCTION.
II. THE GOVERNMENT FAILED TO PROVE APPELLANT’S GUILT TO PREMEDITATED MURDER BEYOND A REASONABLE DOUBT WHEN THE EVIDENCE FAILED TO SHOW APPELLANT ACTED WITH A COOL MIND PRIOR TO THE SHOOTING.

. Smith was a 6-foot 1-inch, 200-pound captain of the II Marine Expeditionary Force football team. At the time of his death, his blood alcohol content was .17.

. This instruction appears to have been taken directly from the Military Judges' Benchbook, DA Pam 27-9 (1982), ¶ 3-86, p. 3-170.