# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major DETRIC A. KELLY**
**United States Army, Appellant**

ARMY 20110138

Headquarters, Joint Readiness Training Center and Fort Polk
Jacqueline L. Emanuel, Military Judge (arraignment)
Gregory A. Gross, Military Judge (trial)
Colonel Keith C. Well, Staff Judge Advocate

For Appellant: Lieutenant Colonel Peter Kageleiry, Jr., JA (argued); Major Jacob D. Bashore, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA (on reply brief).

For Appellee: Captain Sean P. Fitzgibbon, JA (argued); Major Robert A. Rodrigues, JA; Major Katherine S. Gowel, JA; Captain Sean P. Fitzgibbon, JA (on brief).

29 March 2013

------------------------------------
SUMMARY DISPOSITION
------------------------------------

Per Curiam:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of violating a lawful general regulation and premeditated murder, in violation of Articles 92 and 118, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 918 (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dismissal, confinement for life without the eligibility of parole, and forfeiture of all pay and allowances.[1] The accused was

------

[1] The convening authority deferred appellant's adjudged forfeitures and waived his automatic forfeitures, both effective 2 March 2011. The deferment and waiver were terminated at action.

(continued . . .)

credited with 554 days of confinement against his approved sentence to confinement. This case is before this court for review pursuant to Article 66, UCMJ.

We have considered the entire record of trial, the submissions of the parties, the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and oral argument. We find appellant's first assignment of error merits discussion but no relief. The remaining assignments of error and those matters personally raised by appellant are without merit.

## BACKGROUND

During an argument with his wife, appellant shot and killed her. During both opening statement and closing argument, defense counsel focused on the rage this argument presumably precipitated. Appellant testified this argument in their bedroom escalated to the point that his wife kicked him in the groin area, and she then retrieved a gun from a nearby nightstand. However, after appellant gained control of the weapon, his wife retreated to the bathroom. He fired multiple times through the bathroom door, striking her in various places of her body. Then, after forcing the bathroom door open, he shot his wife four times directly in the head and face from close range. Ultimately, appellant's wife died from the multiple gunshot wounds.

When discussing instructions, defense counsel proposed replacing the standard benchbook instructions[2] on premeditated murder, unpremeditated murder, and voluntary manslaughter with language they claimed would more clearly distinguish between the two elements of premeditation and specific intent to kill. Specifically, the proposed instruction included the following sentence regarding the element of premeditated design to kill: "The Government must also prove that MAJ Kelly had considered his actions and engaged in substantial deliberation or cool reflection." Notably, the proposed instructional framework omitted the standard language that would serve to specifically identify unpremeditated murder as a lesser included offense, list those elements, and distinguish between the greater offense of premeditated murder and the lesser offense of unpremeditated murder.

The military judge stated he would review the proposed instructions. Contrary to defense's request, the military judge did not deviate from the standard benchbook instructions and appropriately listed unpremeditated murder as a lesser

---

(. . . continued)

[2] Dep't of Army, Pam 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], paras. 3-43-1, 3-43-2, 3-44-1 (1 January 2010).

included offense and explained its required elements.[3] Regarding the charge of premeditated murder and its relation to the concept of passion, the military judge instructed:

> The killing of a human being is unlawful when done without legal justification or excuse. "Premeditated design to kill" means the formation of a specific intent to kill and consideration of the act intended to bring about the death. The "premeditated design to kill" does not have to exist for any measurable or particular length of time. The only requirement is that it must precede the killing.
>
> An issue has been raised by the evidence as to whether the accused acted in the heat of sudden "passion." "Passion" means a degree of rage, pain, or fear which prevents cool reflection. If sufficient cooling off time passes between the provocation and the time of the killing which would allow a reasonable person to regain self-control and refrain from killing, the provocation will not reduce murder to the lesser offense of voluntary manslaughter.
>
> However, you may consider evidence of the accused's passion in determining whether he possessed sufficient mental capacity to have the "premeditated design to kill." An accused cannot be found guilty of premeditated murder if, at the time of the killing, his mind was so confused by pain and/or fear that he could not or did not premeditate. On the other hand, the fact that the accused's passion may have continued at the time of the killing does not necessarily demonstrate that he was deprived of the ability to premeditate or that he did not premeditate. Thus, if you are convinced beyond a reasonable doubt that sufficient cooling off time had passed between the provocation and the time of the killing which would allow a reasonable person to regain his self-control and refrain from killing, you must decide whether the accused in fact had the premeditated design to kill. If

---

[3] The military judge also instructed on self-defense as it relates to all three offenses of premeditated murder, unpremeditated murder, and voluntary manslaughter.

> you are not convinced beyond a reasonable doubt that the
> accused killed with premeditation, you may still find him
> guilty of unpremeditated murder, if you are convinced
> beyond a reasonable doubt that the death of [KK] was
> caused, without justification or excuse, by an act of the
> accused and the accused intended to kill or inflict great
> bodily harm on the victim.

Appellant now contends the military judge erroneously omitted the "cool mind distinction" from the definition of premeditated design to kill. We disagree.

## LAW AND DISCUSSION

While counsel may request specific instructions from the military judge, the judge has substantial discretion in deciding on the instructions to give. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing *United States v. Smith,* 34 M.J. 200 (C.M.A. 1992)). We review the military judge's refusal to give the defense-requested instruction under an abuse of discretion standard. *Id.* The test to determine if denial of a requested instruction constitutes error is whether (1) the instruction is correct; (2) the instruction is not substantially covered in the other instructions by the military judge; and (3) if the failure to give the instruction deprived the appellant of a defense or seriously impaired its effective presentation. *Id.* (citing *United States v. Winborn,* 14 U.S.C.M.A. 277, 282, 34 CMR 57, 62 (1963)).

Applying this three-part test, we conclude the military judge's refusal to give the requested instruction was not error. First, the requested instructions were not correct. While the instructions given by the military judge clearly identified unpremeditated murder as a lesser included offense of the charged offense of premeditated murder, the requested instructional framework did not. In fact, the requested instructions specifically labeled only voluntary manslaughter as a possible lesser offense. Furthermore, there is no support for the proposition that the requested language requiring "substantial deliberation" in order to find premeditation is a completely accurate statement of the law.

Second, the requested instructions were substantially covered by the instructions that were given. Defense counsel requested the military judge instruct the members that "proof that MAJ Kelly actually intended to kill his wife is not, by itself, sufficient to prove premeditation. The Government must also prove that MAJ Kelly had considered his actions and engaged in substantial deliberation and cool reflection." Not identically but similarly, the military judge instructed the members that a "premeditated design to kill means the formation of a specific intent to kill and consideration of the act intended to bring about the death." He further instructed that "passion means a degree of rage, pain, or fear which prevents cool

4

reflection" and that "passion" is a consideration when determining if appellant had premeditated as well as distinguishing between murder and voluntary manslaughter.

In making such a finding, we recognize the Army Court of Military Review, in *United States v. Viola*, wrote, "Intent to kill alone is insufficient to sustain a conviction for premeditated murder. To sustain such a conviction, the killing must have been committed after reflection by a cool mind." *United States v. Viola*, 26 M.J. 822, 829 (A.C.M.R. 1988) (internal citations omitted). Our superior court then adopted this concept in *United States v. Hoskins*, 36 M.J. 343, 347 (C.M.A. 1993). However, the term "cool mind" is not what is required for instructions. *United States v. Eby*, 44 M.J. 425, 428 (C.A.A.F. 1996). Instead, the instruction must adequately cover the distinction between premeditated murder and unpremeditated murder. *See United States v. Parker*, 71 M.J. 594, 616 (N.M. Ct. Crim. App. 2012); *United States v. Levell*, 43 M.J. 847, 852 (N.M. Ct. Crim. App. 1996). Here, the military judge's instructions did just that.

Third, the instructions read by the military judge did not impair the defense's presentation of evidence or argument at trial. The defense theory at trial was appellant acted in a "rage" at the time he killed his wife and consequently did not intend to kill or have the requisite mental capacity to premeditate. To support this theory, evidence was introduced which indicated appellant and his wife engaged in an escalating argument prior to the shooting which ultimately culminated in the death of appellant's wife. The military judge, in no way, limited defense's attack on the government's proof of premeditation and reflection by a cool mind nor was the defense counsel prohibited in any fashion from fully arguing its "rage" theory to the panel.

For these reasons, we cannot say the military judge abused his discretion in refusing to give the requested defense instruction.

For the first time at oral argument on appeal, it was noted that while the military judge defined "passion" to include "rage" on two occasions, he omitted "rage" when listing possible ways raised by the evidence in which the appellant's mind could have been so confused that he could not or did not premeditate. However, we find to any extent that "rage" could or should have been properly included within that one sentence of the instructions, that omission did not prejudice the appellant. *See United States v. Behenna*, 71 M.J. 228, 234 (C.A.A.F. 2012) (noting that when instructional errors have constitutional implications, then the error is tested for prejudice under a "harmless beyond a reasonable doubt" standard). The military judge defined passion elsewhere in his instructions and specifically included "rage" in that definition twice. As noted above, the defense was not limited in their ability to argue appellant's actions were the result of his alleged rage. There was no objection by the defense following instructions when the military judge asked if counsel objected to the instructions as given. Furthermore,

overwhelming evidence established appellant had the requisite state of mind, did premeditate, and did not act out of passion, regardless of its characterization, at the time he killed his wife.

## CONCLUSION

On consideration of the entire record, the submissions of the parties, those allegations raised by appellant pursuant to *Grostefon*, and oral argument, the findings of guilty are correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

FOR THE COURT:

KENNETH J. TOZZI
COL, JA
Acting Clerk of Court